[Cite as *State v. Braddy*, 2018-Ohio-4904.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals Nos. L-17-1302
                                                                              L-17-1303
      Appellee

                                                 Trial Court No. CR0199902160

v.

Wayne Braddy
Karl Willis                                      **DECISION AND JUDGMENT**

      Appellants                       Decided:  December 7, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, Andrew J.
Lastra and Brenda J. Majdalani, Assistant Prosecuting Attorneys,
for appellee.

Jennifer Paschen Bergeron and Mark A. Godsey, for appellants.

* * * * *

**SINGER, J.**

{¶ 1} In this consolidated appeal, appellants, Karl Willis and Wayne Braddy,

appeal the November 15, 2017 judgment of the Lucas County Court of Common Pleas,

denying their motions for new trial.  For the reasons which follow, we affirm.

## Assignment of Error

{¶ 2} Appellants set forth the following assignment of error:

> The trial court erred when it denied Appellants a new trial when new evidence reviewed in the context of the entire record of the case shows their co-defendant acted alone and they are innocent.

## Background

{¶ 3} In the early morning hours of June 15, 1998, 13-year-old Maurice Purifie was found murdered on Horace Street in Toledo, Ohio. Police began an investigation but developed no leads until later that summer, when a phone call was received from a woman who said her name was Shondrea Rayford.[1] The caller said her boyfriend was Travis Slaughter and he was involved with Purifie's murder.

{¶ 4} Slaughter was arrested on August 26, 1998, and was subsequently questioned by police. After extensive interrogation, Slaughter admitted he was present when the victim was killed, but blamed Willis and Braddy for the murder.

{¶ 5} On September 15, 1998, Slaughter was indicted for complicity to murder. During further interrogation, Slaughter changed his story numerous times with respect to his involvement with the murder.

{¶ 6} On July 7, 1999, Slaughter pled guilty to involuntary manslaughter and aggravated robbery, as well as another crime unrelated to Purifie's murder. On July 9,

---

[1] Rayford is also referred to as Shondrea Reyford and Shondrea Winfree in the record. We will refer to her only as Rayford.

1999, the court accepted the plea and Slaughter was sentenced to ten years for the killing and three years on a gun specification. Slaughter was also sentenced to an additional prison term for the unrelated crime to which he pled.

{¶ 7} On July 21, 1999, Willis and Braddy were indicted for aggravated murder. The duo denied any involvement in Purifie's murder. At their trial, in early January 2000, Slaughter was called as a witness and testified against Willis and Braddy, claiming Purifie was robbed and murdered over drug money. Rayford was also called to testify at trial, pursuant to a subpoena. After she took the witness stand and answered some preliminary questions, Rayford refused to answer any questions about the murder and would not testify further. Rayford was found in contempt of court and sentenced to 30 days in jail; she served all 30 days.

{¶ 8} Altogether, the trial lasted approximately 10 hours. The jury then deliberated for about 26 hours and found Willis and Braddy guilty of aggravated murder and aggravated robbery with firearm specifications. The court sentenced Willis and Braddy to life in prison for aggravated murder, with parole eligibility after 20 years, 10 years for aggravated robbery to run concurrently with the aggravated murder sentence, and a three-year mandatory, consecutive term for the firearm specifications. Willis and Braddy timely appealed; we affirmed. *State v. Willis*, 6th Dist. Lucas No. L-00-1041, 2001 Ohio App. LEXIS 749 (Mar. 2, 2001) and *State v. Braddy*, 6th Dist. Lucas No. L-00-1049, 2001 Ohio App. LEXIS 460 (Feb. 9, 2001).

3.

**{¶ 9}** In 2006, Willis filed a motion for leave to file a motion for new trial, and in a reply memorandum in support, attached Slaughter's affidavit. In the affidavit, dated September 4, 2002, Slaughter recanted his trial testimony and averred that Willis and Braddy were innocent. On July 5, 2006, the trial court denied Willis's motion finding there was no compelling reason to accept Slaughter's recantation over his trial testimony. Willis appealed; we affirmed. *State v. Willis*, 6th Dist. Lucas No. L-06-1244, 2007-Ohio-3959.

**{¶ 10}** In March 2013, Willis and Braddy filed petitions for postconviction relief and motions for leave to file motions for new trial. The state filed motions for summary judgment with respect to the postconviction relief petitions; the trial court granted the motions on March 18, 2015. Willis and Braddy appealed; we affirmed. *State v. Willis*, 6th Dist. Lucas Nos. L-15-1098, L-15-1101, 2016-Ohio-335, 58 N.E.3d 515 (6th Dist.).

**{¶ 11}** Also on March 18, 2015, the trial court granted the motions for leave to file motions for new trial, finding that Willis and Braddy showed, by clear and convincing evidence, they were unavoidably prevented from discovering the new evidence, which was the information contained in Rayford's affidavit. In the affidavit, dated March 4, 2012, Rayford averred, inter alia, that Slaughter acted alone in committing the murder.

**{¶ 12}** Willis and Braddy filed their motions for new trial on March 25, 2015, and a hearing was held on May 25, 2017. On November 13, 2017, the trial court issued its judgment entry denying the motions for new trial. The court found based on the record including Rayford's affidavit and her testimony, that it "cannot say there is a 'strong

4.

probability that it will change the result if a new trial is granted.'"  Willis and Braddy appealed.

## Assignment of Error

{¶ 13} Appellants argue the trial court erred when it denied them a new trial as the new evidence shows Slaughter acted alone and appellants are innocent.  Appellants contend there is no evidence that more than one perpetrator was involved in the murder, and there is no physical evidence indicating the identity of the murderer.  Appellants submit they were only implicated in the murder after Slaughter changed his story about the crime, and Slaughter's trial testimony provided the only evidence of appellants' involvement with the murder.  Appellants observe Slaughter has recanted his trial testimony and admitted he acted alone in beating and shooting Purifie.

{¶ 14} Appellants further argue Rayford has now revealed new information which confirms that Slaughter acted alone in committing the murder and Slaughter intentionally misled the state into prosecuting appellants.  Appellants note Rayford spent 30 days in jail for contempt rather than testifying against them at their trial.  Appellants assert the state expected Rayford to testify at trial that she heard Willis and Braddy confess to their involvement in the murder, but Rayford never heard them confess.  Appellants argue Rayford heard Slaughter confess that he killed Purifie over a rejected sexual advance, not drug money.  Appellants claim the new evidence presented by Rayford, that Slaughter acted alone, creates a strong probability of an acquittal at a new trial.

5.

{¶ 15} The state counters appellants' assertion that Slaughter recanted his trial testimony is not new evidence; rather, it is a contradiction of Slaughter's previous statements. The state contends the jury heard all about Slaughter's previous lies, observed his demeanor at trial and was informed about Slaughter's plea agreement.

{¶ 16} With respect to Rayford's affidavit, the state claims it is not newly discovered evidence. The state asserts, despite appellants' contention that Rayford's affidavit provides compelling evidence not available to appellants before trial, the facts in existence during trial establish that the information Rayford allegedly had in her possession, she held prior to trial. The state contends Rayford's attempt to clarify, change, explain or create additional information is a contradiction of both her prior testimony and statements she made to law enforcement, and serves to impeach her credibility. Regarding Rayford as a witness at the hearing, the state submits she testified to very little and said effectively nothing on the stand. The state maintains appellants' claims are without merit and do not support granting their motions for new trial.

## Law

{¶ 17} A motion for a new trial pursuant to Crim.R. 33 is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Scheibel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus.

{¶ 18} In their motions, appellants allege grounds for a new trial pursuant to Crim.R. 33(A)(6), which provides:

6.

A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

* * *

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *.

{¶ 19} In *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus, the Supreme Court of Ohio set forth factors which must be present to warrant the granting of a motion for a new trial in a criminal case based on newly discovered evidence. The defendant must show that the new evidence: "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *Id.*

{¶ 20} In the context of a motion for new trial, courts view newly discovered evidence where a witness purportedly recants previous testimony with the utmost suspicion. *Taylor v. Ross*, 150 Ohio St. 448, 83 N.E.2d 222 (1948), paragraph three of the syllabus ("[r]ecanting testimony ordinarily is unreliable and should be subjected to the closest scrutiny"). Further, "recanting statements present a question primarily for the trial court to determine whether they are of such a character as to justify setting aside the verdict." *Id.* at paragraph four of the syllabus. When a witness claims to recant prior

7.

testimony, this recantation "mandates that the trial court make two determinations: (1) which of the contradictory testimony offered by the recanting witness is credible and true, and if the recanted testimony is to believed; (2) would the evidence materially affect the outcome of the trial?" *Toledo v. Easterling*, 26 Ohio App.3d 59, 61-62, 498 N.E.2d 198 (6th Dist.1985).

{¶ 21} Even in situations which do not involve a witness recanting prior trial testimony, "the credibility determination is still the paramount concern of the trial court in assessing proposed newly discovered evidence in support of a motion for a new trial." *State v. Phillips*, 10th Dist. Franklin No. 14AP-362, 2014-Ohio-4947, ¶ 16. In *Phillips*, the witness called to testify at the hearing on the motion for new trial did not testify at the trial, but had been interviewed by counsel prior to trial. *Id.* at ¶ 13, 15-16. Thus, the appellate court found that the situation was "analogous to a motion for new trial based on a witness recanting his or her trial testimony." *Id.* at ¶ 16. The appellate court further found the trial court properly denied the motion for new trial based on newly discovered evidence, because "[a]s the finder of fact, the trial court determined the witness lacked credibility and the new evidence was not sufficient to warrant a new trial." *Id.*

### Analysis

{¶ 22} Here, appellants contend the trial court should have granted them new trials because Rayford's testimony, if offered at a new trial, would result in acquittals.

{¶ 23} The trial court found in its judgment entry that neither Rayford's affidavit nor her testimony at the hearing on the motions for new trial "creates 'a strong

8.

probability that it will change the result if a new trial is granted.'" The court found Rayford's affidavit "does little more than add to [the] laundry list of credibility concerns about Slaughter which are already contained in the trial record." The court further found that Rayford "was able to testify to very little at the hearing. She clearly did not have a firm grasp of the events she recalled in her affidavit * * * and said effectively nothing on the stand." The court noted Rayford had such a weak grasp of the contents of her affidavit that counsel had to be appointed to represent her at the hearing so "she made no missteps by which she may perjure herself on the stand."

{¶ 24} As set forth above, the first factor of *Petro* requires that the new evidence must disclose a strong probability that it will change the outcome at trial if a new trial is granted. In addition, as indicated in *Phillips*, the credibility of a witness is the utmost concern of the trial court in considering proposed newly discovered evidence. Upon review of the entire record of the case, including Rayford's affidavit and the transcript of the hearing on the motions for new trial, we agree with the trial court's conclusion that Rayford lacked credibility as a witness, and this new evidence did not have a strong probability of changing the result if a new trial were granted.

{¶ 25} The record reveals Rayford, in her affidavit, set forth when and where she met Travis and, in general terms, what their relationship entailed. Rayford averred the following in her affidavit. Travis told her, in July 1998, that he shot somebody named Maurice. In describing the murder, Travis said Maurice was the only other person in the parking lot; Travis did not mention any other names. Travis said he and Maurice argued

9.

because Travis asked Maurice if Travis could pay him to perform oral sex, and Maurice threatened to tell, so Travis shot him. Maurice got up and tried coming after Travis, so Travis shot him again, so Maurice could no longer get to Travis. Travis asked Rayford to keep this revelation secret, but Rayford told a friend. The friend called Crime Stoppers using Rayford's name and reported Travis's involvement. In August 1998, when Rayford visited Travis in jail, Travis was acting strangely, he began talking about Karl and Wayne and said they were with him when the murder happened and they also shot Maurice. Rayford told Travis she was confused as this was the first time Travis mentioned Karl and Wayne in relation to what happened to Maurice, but Travis insisted he had told her about Karl and Wayne during their first conversation. In September 1998, during a meeting with a prosecutor and a victim advocate, Rayford falsely confirmed Travis's story that she was on a four-way phone call with Travis, Karl and Wayne, when Karl and Wayne confessed to being a part of the murder.

{¶ 26} With respect to Rayford's participation at the hearing on the motions for new trial, the record shows Rayford was expected to appear at the start of the hearing, at about 9:30 a.m., but did not appear until approximately 12:45 p.m. Rayford took the witness stand and testified, but the information she shared was hardly helpful, as she could not recall what the prosecutor expected her to testify about at Willis and Braddy's trial, nor did she recall that she testified at all at that trial before she was held in contempt and sent to jail for 30 days. In addition, Rayford could not remember many details concerning her relationship with Slaughter or what Slaughter told her about the murder of

10.

Purifie.  Even after Rayford was shown her affidavit and asked if specific averments helped her to remember what Slaughter told her about the murder, Rayford testified she could not remember.  Moreover, during Rayford's testimony concerning the statements in her affidavit, counsel was appointed because the trial court was concerned there was a risk of perjury, and Rayford may be entitled to assert certain Fifth Amendment rights.

{¶ 27} Overall, Rayford was not a credible witness, there was no substance to the testimony she gave at the hearing, and her testimony was not helpful to appellants.  Moreover, her testimony would not, in all likelihood, bring about a different result if a new trial were held.  Since appellants were not able to satisfy all of the *Petro* factors, we find the trial court did not abuse its discretion in denying appellants' motions for new trial.  Accordingly, appellants' assignment of error is not well-taken.

### Conclusion

{¶ 28} For the foregoing reasons, the November 15, 2017 judgment of the Lucas County Court of Common Pleas is affirmed.  Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

James D. Jensen, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.